UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>NATURAL SOLUTIONS FOUNDATION, et al<br><br>Defendants. | Civil Action No. 20-cv-16016 (JXN)(ESK)<br><br>OPINION |

**NEALS**, District Judge:

Before this Court is Defendants Rima Laibow and Ralph Fucetola (collectively, the "Individual Defendants") partial motions to dismiss the United States of America's (the "Government" or "Plaintiff") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331, 1337, and 1348, and 21 U.S.C. §332(a). Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, the Individual Defendants' partial motions to dismiss [ECF Nos. 11, 14] are **DENIED**.

**I. BACKGROUND**[1]

On November 13, 2020, the Government initiated this action against the Individual Defendants and Natural Solutions Foundation ("NSF") (collectively, "Defendants") under the Federal Food, Drug, and Cosmetic Act (the "Act" or the "FDCA"), 21 U.S.C. § 332(a), to enjoin

---

[1] For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to the Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008); *M.H. by D.H. v. C.M.*, Civ. No. 3:20-01807(BRM)(TJB), 2020 WL 6281686, at *1 (D.N.J. Oct. 27, 2020).

1

the sale of "Dr. Rima Recommends Nano Silver 10PPM," ("Nano Silver Product") an unproven and unapproved treatment for coronavirus disease 2019 ("COVID-19") and any other disease. Compl. ¶ 1, ECF No. 1. The Government claims that Defendants distributed its Nano Silver Product, which was accompanied by claims that it "can be literally life-saving in pandemic situations" and that it stopped "the parent virus of COVID19 . . . dead in its tracks." *Id.* at ¶ 35.

In the Complaint, the Government alleges that "Defendants' nano silver product is a drug within the meaning of the Act because it is intended for use in the cure, mitigation, treatment, or prevention of disease in man." *Id.* at ¶ 15. The Government further alleges that Defendants' Nano Silver Product label claims to be used to cure, mitigate, treat, or prevent COVID-19. *Id.* More specifically, the Government claims that "Defendants' website www.opensourcetruth.com contained claims that their nano silver product cures, mitigates, treats, or prevents COVID-19." *Id.* at ¶ 16. The post on Defendants' website directed consumers to "[u]se Nano Silver 10 PPM . . . to support normal cell membrane integrity – and it is your cell membrane that is your last line of defense against the COVID virus adhering, penetrating and replicating. No replication, no disease." *Id.* The website also included the following claims regarding Nano Silvers potential to treat COVID-19:

> Speaking of potentially lethal, it does not matter if the novel coronavirus is a weaponized version of a natural virus or not in terms of infection. What matters is that your immune system prevents it from making you sick or spreading it to others. And the very best way I know to do that is to support your immune function with my evidence-based, non-toxic Nano Silver 10 PPM. I take 1 cap full prophylactically once a day and have absolutely no fear or concern about coming down with whatever this, or any other, bug can do. *None*. . .. And it is available at www.nsfmarketplace.com.

Plaintiff alleges that the Food and Drug Administration ("FDA") "conducted comprehensive searches of the publicly available medical and scientific literature for nano silver

2

and determined that there are no published, adequate and well-controlled studies demonstrating that Defendants' nano silver product is safe and effective for use under the conditions prescribed, recommended, or suggested in its labeling." *Id.* at ¶ 23. As a result, the Government asserts that Defendants' Nano Silver Product is a "new drug" under 21 U.S.C. § 321(p)(1). *Id.*

The Government further asserts that Defendants' Nano Silver Product is an unapproved new drug in interstate commerce. *Id.* at ¶ 26. To this point, the Government claims that "Defendants shipped, or caused the shipment of, their nano silver product from Arizona to Maryland, which constitutes distribution in 'interstate commerce' within the meaning of 21 U.S.C. § 321(b)(1)." *Id.* Based on these facts, the Government alleges that "Defendants violated 21 U.S.C. § 331(d) by introducing or causing to be introduced, or delivering for introduction or causing to be delivered for introduction, into interstate commerce an unapproved new drug." *Id.*

In the summer of 2020, the FDA and the FTC jointly issued a Warning Letter to Defendants, informing them that they are violating the FDCA by distributing unapproved new drugs and misbranded drugs in interstate commerce. *Id.* at ¶ 35. Despite this warning, the Government alleges that Defendants continued to distribute their Nano Silver Product accompanied, by the claim that someone who takes "1 cap full . . . a day" of their product should have "no fear or concern" about coronavirus. *Id.* at ¶ 1. After the Government notified Defendants of its intention to bring this lawsuit, Plaintiff alleges that "Defendants put their nano silver product 'On Hold' and removed some COVID-19-related claims from their public-facing websites, but made clear that their actions were a temporary stopgap and that they intended to challenge the government's position." *Id.* at ¶¶ 1, 38.

The Government asserts two causes of action: (1) Violation of 21 U.S.C. § 331(d), by introducing or causing to be introduced, or delivering for introduction or causing to be delivered

for introduction, into interstate commerce a new drug, as defined in 21 U.S.C. § 321(p), that is neither approved pursuant to 21 U.S.C. § 355 nor exempt from approval; and (2) Violation of 21 U.S.C. § 331(a), by introducing or causing to be introduced, or delivering for introduction or causing to be delivered for introduction, into interstate commerce a drug that is misbranded within the meaning of 21 U.S.C. § 352(f)(1). *Id*. at ¶ 2. Defendant NSF filed its Answer to the Government's Complaint on January 29, 2021. Answer, ECF No. 10. The Individual Defendants Ralph Fucetola and Rima Laibow filed the pending motions to dismiss on January 29, 2021, and February 2, 2021, respectively. *See* Fucetola Partial Mot. to Dismiss, ECF No. 11; Laibow Partial Mot. to Dismiss, ECF No. 14.

As best the Court can construe, the Individual Defendants move to dismiss the Government's Complaint on the ground that certain government officials did not comply with all the requirements under 5 U.S.C. § 552(a), which the Individual Defendants argue negates some of the claims asserted by Plaintiff. ECF No. 11-1 at 6. In response, the Government contends that "[t]he Individual Defendants' argument is entirely misplaced." ECF No. 19 at 4. To this point, the Government advances the following arguments:

> First, the Individual Defendants misunderstand the process for obtaining approval for a new drug: (i) FDA, through the FDCA's statutory authority and delegation from DHHS, administers the FDCA and has published its organizational structure and the process for submitting a new drug application ("NDA"); and (ii) the Individual Defendants had actual knowledge of that information. Further, the Individual Defendants misunderstand the allegations alleged in the complaint against them: the United States does not allege a violation of failing to file an NDA; and the violation that is alleged (21 U.S.C. § 331(d)) does not turn on mere submission of an NDA.

*Id.* In their reply, the Individual Defendants contend that "Plaintiff's complaint is premised on a specific element: the Defendants were required by 21 U.S.C. §355 to file an application with the Secretary of Health and Human Services and obtain approval to ship in interstate commerce the

4

product named 'Nano-Silver.'" ECF No. 20 at 1-2. The Individual Defendants contend that because Plaintiff failed to comply with the mandates of the Administrative Procedure Act, Plaintiff cannot prove critical elements of its Complaint. *Id*. at 2.

## II. LEGAL STANDARD

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading is sufficient so long as it includes "a short and plain statement of the claim showing that the pleader is entitled to relief" and provides the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (internal quotations omitted). In considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all the facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). Moreover, dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Id.*

While this standard places a considerable burden on the defendant seeking dismissal, the facts alleged must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. That is, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In order to determine whether a complaint is sufficient under these standards, the Third Circuit requires a three-part inquiry: (1) the court must first recite the elements that must be pled in order to state a claim; (2) the court must then determine which allegations in the complaint are merely conclusory and therefore need not be given an assumption of truth; and (3) the court must assume the veracity

of well-pleaded factual allegations and ascertain whether they plausibly give rise to a right to relief. *Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010).

**III.  DISCUSSION**

As noted above, the two causes of action alleged in the Complaint are violations of 21 U.S.C. §§ 331(a) and (d).  *See* Compl., at ¶¶ 2, 27, 34.  The Individual Defendants contest the Government's claim under 21 U.S.C. § 331(d).

    **A.  <u>Distribution of Unapproved New Drugs, 21 U.S.C. § 331(d)</u>**

The FDCA defines a "drug" as a substance that is "intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man," 21 U.S.C. § 321(g)(1)(B), or "intended to affect the structure or any function of the body of man."  21 U.S.C. § 321(g)(1)(C).  An intended use can be determined in any relevant manner, including through its labeling, *see* 21 C.F.R. § 201.128, which includes "all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article."  21 U.S.C. § 321(m). Labeling need not be physically attached to the product, but instead includes materials that are textually relevant.  *See Kordel v. United States*, 335 U.S. 345, 349-50 (1948); *United States v. S Hackett Mktg. LLC*, Civ. No. 17-04911(MAS)(TJB), 2018 WL 4146606, at *3 (D.N.J. Aug. 30, 2018).

Under the FDCA, a "new drug" is any drug "the composition of which is such that such drug is not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof."  21 U.S.C. § 321(p)(1).  To introduce, or deliver for introduction, a "new drug" into interstate commerce, the FDA must approve a new drug application ("NDA") or an abbreviated new drug application ("ANDA"), or

the new drug must be exempt from the approval process pursuant to an investigational new drug application ("IND"). 21 U.S.C. § 355(a), (b), (j), and (i). Otherwise, a person who introduces or delivers for introduction into interstate commerce an unapproved new drug violates the Act. 21 U.S.C. § 331(d).

Here, upon review of the Complaint the Court finds that the Government has sufficiently pled that the Individual Defendants violated 21 U.S.C. § 331(d) by introducing an unapproved new drug into interstate commerce.

### i. Defendants' Nano Silver Product is a "Drug" under the FDCA.

The Government alleges, with specific examples, that Defendants' "labeling" demonstrates that Nano Silver is intended to cure, mitigate, treat, or prevent COVID-19 and other diseases. *See* Compl. at ¶¶ 1, 15. For instance, the Government claims that "Defendants' website www.opensourcetruth.com contained claims that their nano silver product cures, mitigates, treats, or prevents COVID-19." *Id.* at ¶ 16. The post on the website directed consumers to "[u]se Nano Silver 10 PPM . . . to support normal cell membrane integrity – and it is your cell membrane that is your last line of defense against the COVID virus adhering, penetrating and replicating. No replication, no disease." *Id*. The website also included the following claims regarding Nano Silvers potential to treat COVID-19:

> Speaking of potentially lethal, it does not matter if the novel coronavirus is a weaponized version of a natural virus or not in terms of infection. What matters is that your immune system prevents it from making you sick or spreading it to others. And the very best way I know to do that is to support your immune function with my evidence-based, non-toxic Nano Silver 10 PPM. I take 1 cap full prophylactically once a day and have absolutely no fear or concern about coming down with whatever this, or any other, bug can do. *None*. . .. And it is available at www.nsfmarketplace.com.

Accepting these allegations as true, the Court finds that the Government has sufficiently alleged that Defendants' Nano Silver Product is a "drug" under the FDCA. *See S Hackett Mktg.*

7

*LLC*, 2018 WL 4146606, at *3 (finding that plaintiff sufficiently alleged that products were "drugs," based on allegations that the labeling made "at least thirty-two structure and function claims.").

### ii. Defendants' Nano Silver Product is an Unapproved "New Drug" under the FDCA.

The Complaint alleges that Defendants' Nano Silver Product is a "new drug," because there are no published adequate and well-controlled studies for the intended use of Defendants' Nano Silver Product to cure, mitigate, treat, or prevent COVID-19. *Id.* at ¶ 23. Specifically, the Government claims that:

> FDA conducted comprehensive searches of the publicly available medical and scientific literature for nano silver and determined that there are no published, adequate and well-controlled studies demonstrating that Defendants' nano silver product is safe and effective for use under the conditions prescribed, recommended, or suggested in its labeling. Because there are no published adequate and well-controlled studies for the intended use of Defendants' nano silver product to cure, mitigate, treat, or prevent COVID-19, qualified experts have not come to the consensus of opinion that the product is effective for such use.

*Id*. The Government also explains that "[a]fter searching its records for NDA, ANDA, and IND submissions by Defendants, FDA determined that there are no approved NDAs or ANDAs and no INDs in effect for Defendants' nano silver product." *Id.* at ¶ 24. With these allegations, the Government has sufficiently pled that Defendants' Nano Silver Product is an unapproved "new drug" within the meaning of the FDCA. *See S Hackett Mktg. LLC*, 2018 WL 4146606, at *3-4 (finding that plaintiff sufficiently alleged that products were unapproved "new drugs," based on allegations that the FDA found "no adequate and well-controlled studies" demonstrating the effectiveness of the products for their intended use, and that the defendants lacked an approved "NDA or ANDA, or effective IND for any of their drugs.").

8

      iii.  **Defendants Distributed its Nano Silver Product into Interstate Commerce.**

Finally, the Government has plausibly alleged that Defendants distributed its Nano Silver Product into interstate commerce by pleading that "[o]n or about July 24, 2020, Defendants shipped, or caused the shipment, their nano silver product from Arizona to Maryland," which constitutes distribution in "interstate commerce" within the meaning of 21 U.S.C. § 321(b)(1). *Id.* at ¶ 26. *See S Hackett Marketing*, 2018 WL 4146606 at *4 (finding that plaintiff sufficiently pled interstate commerce by alleging, *inter alia*, that the defendants had shipped "various Illicit Drugs from New Jersey to Maryland."); *United States v. Genesis II Church of Health & Healing*, 476 F. Supp. 3d 1283, 1291 (S.D. Fla. 2020) (stating "Plaintiff has plausibly alleged that Defendants distributed [its new drug] into interstate commerce by pleading that . . . Defendants shipped [its new drug] from Florida to Virginia[.]").

Because the Government has sufficiently alleged that Defendants distributed its Nano Silver Product, an unapproved "new drug," into interstate commerce, the Complaint states a cause of action under 21 U.S.C. § 331(d).  Accordingly, the Individual Defendants' motion to dismiss must be denied.

### IV. CONCLUSION

For the foregoing reasons, the Individual Defendants' partial motions to dismiss [ECF Nos. 11, 14] are **DENIED**.  An appropriate Form of Order accompanies this Opinion.

DATED: September 24, 2021        s/ Julien Xavier Neals
                       Julien Xavier Neals
                       United States District Judge